# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:17-cr-25 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| DONALD SMITH (1), | : | |
| DONALD JENKINS-MILLS (2), | : | |
| SALATHIEL GOODSON (3), | : | |
| Defendants. | : | |

---

## ENTRY AND ORDER DENYING MOTIONS TO SUPPRESS (DOCS. 37, 38, 40)

---

This case is before the Court on the Motions to Suppress (Docs. 37, 38) filed by Defendants Donald Smith ("Smith") and Salathiel Goodson ("Goodson") and joined by Defendant Donald Jenkins-Mills ("Jenkins-Mills") (Doc. 40). Smith, Goodson and Jenkins-Mills were indicted for knowingly and intentionally conspiring to possess with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and § 846. (Doc. 21.)

Smith moves to suppress all evidence seized, pursuant to a search warrant, from a residence at 51 Glenwood Avenue, Dayton, Ohio. Smith argues that suppression is warranted because (1) although there may have been probable cause to search the residence for certain specific packages known to contain contraband, law enforcement

did not have probable cause to search the entire residence, and (2) the search warrant is overly broad in light of the supporting affidavit's contents.

Goodson moves to suppress all evidence seized from the search of a 2008 Jeep Commander SUV. Goodson was driving the SUV when he was stopped for speeding and subsequently the SUV was searched. Goodson argues that the officers who searched the vehicle did not have any reasonable suspicion or probable cause justifying Goodson's detention and the search of the vehicle.

On June 22, 2017, the Court held a hearing on the Motions to Suppress. (Doc. 44.) Smith then filed a memorandum in support of his Motion to Suppress, which Jenkins-Mills joined. (Docs. 47, 48.) Goodson declined to file a post-hearing memorandum. The Government responded to Smith's memorandum, in response to which Smith filed a reply. (Docs. 49, 51.) This matter is now fully briefed and ripe for the Court's review.

For the reasons below, the Motions to Suppress are **DENIED**.

## I. FINDINGS OF FACT

The parties do not dispute the facts, although they dispute their legal significance. The following findings are made based on the testimony and exhibits submitted by the parties at the June 22, 2017 hearing on the Motions to Suppress.

### A. January 17, 2017 Search of Goodson's Vehicle

On Tuesday, January 17, 2017, Trooper Joseph M. Weeks of the Ohio Highway Patrol was assigned as a Task Force Officer ("TFO") to the Miami Valley Bulk Smuggling Task Force ("MVBSTF"). (Doc. 44 at 7-8, 17 & 20-21). At approximately 10:09 AM, Trooper Weeks observed a 2008, silver Jeep Commander SUV traveling in excess of

the posted speed limit southbound on Interstate 75 in violation of Ohio Rev. Code § 4511.21D. (*Id*. at 8-9, 20-21, 27-28; Gov't Ex. 1). Trooper Weeks therefore initiated a traffic stop on the SUV. (*Id*.)

As Trooper Weeks approached the SUV, he detected a strong odor of marijuana emanating from its interior. (Doc. 44 at 11, 23). When Trooper Weeks asked the driver to produce his license, he told Trooper Weeks that he was not a valid driver. (*Id*. at 10). Trooper Weeks asked the driver to exit his vehicle, at which time the driver said that he had a small amount of marijuana on his person and a marijuana cigar inside the vehicle. (*Id*. at 10-12). No one else was in the SUV.

Trooper Weeks determined that the driver of the SUV was Defendant Robert C. Goodson of 5125 Norris Drive, Dayton, Ohio 45414. (*Id*. at 9-10; Gov't Ex. 1). Due to Goodson's admitted possession of marijuana, Trooper Weeks and TFO Ray Swallen conducted a probable cause search of the SUV. (*Id*. at 11-13, 22-23). During the search, TFO Swallen observed a DVD player in a box stored in the vehicle's third row seat area. (*Id*. at 12-13, 24-25). Goodson also had approximately $2,000 in U.S. currency in his front pocket. (*Id*. at 18, 25-26). Trooper Weeks seized the marijuana on Goodson's person and the marijuana cigar discovered inside the vehicle. (*Id*. at 24; Gov't Ex. 2.)

Following the search, Trooper Weeks issued Goodson a warning for his traffic infraction and a citation for his possession of marijuana. (Doc. 44 at 14-15, 22; Gov't Exs. 1, 2.)

### B. January 23, 2017 Search of 51 Glenwood Avenue Residence

Three days later on Friday, January 20, 2017, UPS security officials received an anonymous telephone call advising them that packages containing marijuana were going to be delivered to 51 Glenwood Avenue in Dayton, Ohio. (Doc. 44 at 31.) Using their package delivery database, UPS officials determined that three packages were en route to that address. Each of the packages was addressed to "Cams4less", but UPS officials were unable to establish any link between the "Cams4less" name and the 51 Glenwood Avenue address. (*Id*. at 32.) They also could not confirm the existence of any business named "Cams4less."

UPS officials diverted the three suspect packages, which were scheduled to be delivered by a local UPS truck, to the UPS Hub Facility located at 1308 Brandt Pike in Huber Heights, OH. They also telephoned law enforcement officials to await further instructions. (*Id*. at 31-33, 35.) Detective Diane Taylor, a deputy sheriff with the Montgomery County Sheriff's Office and member of the Regional Agency Narcotics and Gun Enforcement ("RANGE") Task Force, initially spoke with UPS officials about the situation. (*Id*. at 30-31.) Taylor called Detective Hutson on the RANGE Task Force, who went with RANGE TFO Samples to the Brandt Pike UPS facility. They brought with them a a narcotics-detecting K-9 (which means "dog" in law enforcement parlance) named "Gunner". (*Id*. at 32-33.)

Upon arriving at the scene, Gunner was directed to perform a free-air sniff on the three packages, which had been placed in the parking lot outside the UPS facility.

4

Gunner positively alerted to the scent of narcotics on each of the three packages. (*Id*. at 33, 55, 57.)

TFOs Samples and Hutson assumed custody of the packages and took them to the Montgomery County Sheriff's Office for safe keeping. (*Id*. at 33). On Saturday, January 21, 2017, Detective Taylor submitted an application for a warrant to open the packages to Montgomery County Common Pleas Court Judge Richard Skelton. At 1:30 PM, Judge Skelton approved the warrant. (*Id*. at 33-35, Gov't Ex. 3.)

TFOs executed the warrant and opened the three seized packages. (Doc. 44 at 35; Gov't Exs. 4-10.) Two of the packages contained DVD players in which 10 individually wrapped plastic bags containing significant quantities of crystal methamphetamine were hidden. Field tests and subsequent forensic laboratory tests confirmed these bags contained a total of approximately 6,917 grams of contraband. The three packages and their contents were secured in the RANGE Task Force's evidence locker. (Doc. 44 at 36-38; Gov't Exs. 3-11.)

On Monday, January 23, 2017, Detective Taylor presented Judge Skelton an application for an anticipatory search warrant on the 51 Glenwood Avenue residence. This application described the plan to complete a controlled delivery of the packages to the address, together with the above facts describing the discovery of the crystal methamphetamine hidden within the packages. (Gov't Ex. 12.)

At 8:45 AM on January 23, 2017, Judge Skelton approved the warrant. The warrant specifically authorized a search of (1) any individual found in possession of the packages; (2) "and/or" the premises and surrounding curtilage of the residence located

5

at 51 Glenwood Ave.; "and/or" (3) any subsequent "residence, structure, place or vehicle" into which the packages may be removed to for the express and sole purpose of recovering the packages. (Doc. 44 at 39-40, 44-45, 52, 57-60; Gov't Ex. 12.)

Prior to re-sealing and delivering the packages to 51 Glenwood Avenue, TFOs placed inside them a number of the original plastic wrapped bags containing approximately 892 grams of methamphetamine, a GPS tracking device, and a silent alarm mechanism. (Doc. 44 at 39-40; Gov't Exs. 13 and 15.)

At 2:00 PM on January 23, 2017, Goodson arrived at 51 Glenwood Avenue driving the same 2008 silver Jeep Commander SUV in which he was stopped on January 17. (Doc. 44 at 40-41.) TFOs observed Smith and Jenkins-Mills get in the SUV and it left the residence. (*Id*. at 40-41). TFOs surveilled the SUV as it traveled to a second residence at 1415 Tampa Avenue in Dayton. Upon arriving at this location, the three Defendants exited the vehicle and entered the residence. (*Id*. at 41-42; Gov't Ex. 14.)

At approximately 2:26 PM, TFO McCoy, posing as a UPS delivery person, approached the 51 Glenwood residence with the re-sealed packages. After knocking on the front door and receiving no response, he left the three packages on the front porch and left. (Doc. 44 at 42; Gov't Exs. 13 and 15.) Immediately after completing the delivery, TFOs asked UPS personnel to update their delivery tracking system to reflect delivery of the packages. (Doc. 44 at 42-43.)

About 5–10 minutes later, TFOs observed all three Defendants leave the residence at 1415 Tampa Avenue and head to 51 Glenwood Avenue. (*Id*. at 43-44.) Upon arriving at 51 Glenwood Avenue, Defendants approached the front porch, collected the

packages and entered the house. (*Id*. at 43.) About a minute later, TFOs entered the premises to execute the anticipatory search warrant.

TFOs apprehended and searched each of the three Defendants and then completed a search of the residence. (*Id*. at 43-44; Gov't Exs. 15-16.) These searches resulted in the discovery of eight cellphones, including one on Goodson; one on Smith, and the remaining six scattered on the living room floor, fireplace mantel and in the kitchen. (Doc. 44 at 47-48.) The searches also resulted in the discovery of approximately $1,700 in U.S. currency on the living room floor and approximately $1,600 in U.S. currency on Goodson. (*Id*. at 47.) A search of a rear bedroom previously occupied by Smith led to the discovery of a large number of money orders and wire transfer documents and a "distribution amount" of heroin. (*Id*.) A digital scale was also discovered inside the residence. (*Id*.)

## II. SMITH'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM THE 51 GLENWOOD AVENUE RESIDENCE

### A. Legal Standard

The Fourth Amendment reads in part: "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This Amendment is designed to protect the rights of individuals against unreasonable government searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014). A party seeking the suppression of evidence has the burden of establishing that it was secured by an

unlawful search. *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991), citing *United States v. Freeland*, 562 F.2d 383, 385 (6th Cir.), cert. denied, 434 U.S. 957 (1977).

Warrants may be issued only upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). The affidavit supporting an application for a search warrant must provide information from which the issuing magistrate can "make a practical, common sense decision whether, given all the circumstances set forth before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). A magistrate's decision to issue a warrant must be reviewed with great deference, and a reviewing court must examine only whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *United States v. Frechette*, 583 F.3d 374, 380-81 (6th Cir. 2009). The review of the sufficiency of the evidence is limited to the four corners of the affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

The Fourth Amendment requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." This particularity requirement "eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *Blakeney*, 942 F.2d at 1026. Specification of a category of documents is not overly broad merely because it requires officers to exercise "some minimal judgment" as to what may be properly seized. *United States v. Bruce*, 396 F.3d 697 (6th Cir. 2005). Nor is the use of generic terms a per se violation of the Fourth

Amendment. *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). "The degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). Consequently, a description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* at 1033. If stolen goods are intermingled with, and otherwise indistinguishable from legitimately owned property, the entire class of property may sometimes be seized temporarily for later inspection and sorting. *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999).

### B. <u>Analysis</u>

Smith argues that evidence seized from the search of the residence at 51 Glendale Avenue should be suppressed because (1) the affidavit supporting the search warrant does not establish probable cause to search the residence itself, and (2) the search warrant is overly broad in violation of the Fourth Amendment's particularity requirement.

The Government counters that the Sixth Circuit has upheld the issuance of anticipatory search warrants containing language similar to that used in the warrant issued here, which became effective upon the controlled delivery and acceptance of the packages. (Doc. 49 at 13, citing, inter alia, *United States v. Jackson*, 55 F.3d 1219, 1223 (6th Cir. 1995) and *United States v. Lawson*, 999 F.2d 985, 987-88 (6th Cir. 1993).) The Government argues that once the Defendants removed the packages from the front porch and carried them inside the residence, the officers had probable cause to search the entire interior of the premises, not only for the crystal methamphetamine, but also

any other evidence of drug trafficking. (Doc. 49 at 13.) The Government also relies on the "good faith" exception to the exclusionary rule, which provides that evidence obtained pursuant to a warrant should not be suppressed where the police reasonably believed that the warrant was lawful. (*Id.*, citing *United States v. Leon*, 468 U.S. 897, 918-19 (1984).)

The Government's reliance on *Jackson* is appropriate. 55 F.3d at 1223. In that case, the Sixth Circuit considered whether probable cause existed for the search of a residence where a package containing illegal drugs was to be delivered. As here, the officers in *Jackson* obtained an anticipatory search warrant that authorized them to recover the illegal drugs contained in the package and search the residence where they were delivered. One defendant moved to suppress the evidence seized from the residence on the grounds that no probable cause existed to search the residence once the package had been removed from its premises. Denying the motion, the district court held that probable cause to search the residence survived the removal of the package. Reviewing the district court's decision *de novo*, the Sixth Circuit affirmed.

The Sixth Circuit first noted that it had upheld the issuance of anticipatory warrants—thus, the fact that the warrant was issued prior to the delivery of the package did not, in itself, render the warrant defective. *Id.*, citing *United States v. Lawson*, 999 F.2d 985, 987-88 (6th Cir.), cert. denied, 510 U.S. 1001 (1993); *United States v. Rey*, 923 F.2d 1217, 1220-21 (6th Cir.1991). Reviewing its precedent, the Sixth Circuit held that nothing in *Rey* and *Lawson* supported the proposition that a search of a residence would violate the Fourth Amendment if "the suspects in the premises to be searched abscond with the

package upon its delivery." *Id.*, citing *Rey*, 923 F.2d at 1221; *Lawson*, 999 F.2d at 987-88. The Sixth Circuit concluded that once the package was taken inside the residence, "probable cause existed to search the premises not only for the contraband itself, but also for other evidence of drug trafficking." *Id.*

Here, the supporting affidavit stated that packages containing significant amounts of crystal methamphetamine were scheduled to be delivered to 51 Glenwood Avenue. (Gov't Ex. 12 at 2.) Shortly after the packages were delivered, Defendants took them into the residence. As in *Jackson*, once Defendants took the crystal methamphetamine into the residence, probable cause existed to search inside the residence for items relating to the trafficking of that controlled substance.

Smith also argues that the search warrant authorized a search of the residence only if the packages were removed from the premises. (Doc. 47 at 2, citing Gov't Ex. 12 at 5 (Search Warrant, § III(b)(ii)); Doc. 44 at 52-53.) This argument is based on a misreading of the warrant. The warrant authorizes a search for items relating to drug trafficking, including the crystal methamphetamine itself, which may be concealed (a) on any person in possession of the packages, (b) the residence at 51 Glenwood Avenue, or, (c) if the packages are removed from 51 Glenwood Avenue, any other residence, structure, place or vehicle where the packages may be located, as determined through visual observation and/or GPS tracking. (Gov't Ex. 12 at 5 (Search Warrant, § III(a)-(b)).) Thus, the limitation in the warrant relating to the removal of the packages is relevant only to searches of locations outside 51 Glenwood Avenue. Smith challenges

11

the search of only the residence at 51 Glenwood Avenue. This limitation is therefore irrelevant.

Smith also argues that the search warrant is defective because it stemmed from a phone call from an anonymous source whose reliability was not established. This argument fails to take into account that two search warrants were issued in this case: the first authorized officers to open the packages and the second authorized the search at 51 Glenwood Avenue. When considering the application for the second search warrant, Judge Skelton did not need to consider the reliability of the anonymous source because, as stated in the affidavit, law enforcement had already determined that the packages contained crystal methamphetamine by that time.

Perhaps Smith is challenging the first search warrant, but probable cause also supported its issuance. The affidavit supporting that warrant stated that the Security Supervisor for UPS contacted law enforcement regarding three suspicious packages. (Gov't Ex. 3 at 3.) One package weighed 6 pounds, but the other two were much heavier at 38 and 40 pounds. (*Id*.) The Security Supervisor could not confirm the existence of the business to which the packages were addressed, which made them more suspicious. (*Id.*) Law enforcement dispatched a detective and narcotics-detecting K-9, which alerted to all three packages. (*Id*. at 4.) These facts establish probable cause. Notably, nowhere in the supporting affidavit is there any mention of the anonymous phone call.

Smith's argument that the search warrant violated the Fourth Amendment's particularity requirement also fails. The search warrant identifies several categories of items that could be seized, all of which are related to drug trafficking. The Court finds

the search warrant's degree of specificity appropriate in light of the crime under investigation and types of items sought. *Ables*, 167 F.3d at 1033. Although officers could exercise some judgment in deciding which items could properly be seized, it was not unrestricted.

### III. GOODSON'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM VEHICLE

Goodson seeks to suppress all evidence obtained from the January 17, 2017 search of the 2008 Jeep Commander SUV. Since Goodson did not file a post-hearing memorandum, the Court is left with only the bare contention in his original motion that "[l]aw enforcement officers had no reasonable suspicion or probable cause upon which to stop, detain and search as required by the United States Constitution." (Doc. 38 at 1.)

Goodson's decision not to file a post-hearing brief is reasonable given the circumstances. Trooper Weeks properly conducted a traffic stop of Goodson's SUV after observing it exceed the posted speed limit. Probable cause to search the SUV was established by the strong odor of marijuana detected emanating from inside it and Goodson's admission that he had marijuana both on his person and inside the SUV. Thus, there was not only a "fair probability" that contraband or evidence of a crime would be found inside the vehicle, it was a near certainty. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010). Trooper Weeks therefore had probable cause to detain Goodson and search the SUV that he was driving.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** the Motions to Suppress (Docs. 37, 38, 40) brought by Defendants Smith, Jenkins-Mills, and Goodson.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, September 6, 2017.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE