# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 3:17-cr-00025-TMR-1 |
| v. | : |
| | : Judge Thomas M. Rose |
| DONALD SMITH, | : |
| Defendant. | : |

## ENTRY AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (DOCS. 111)

This case is before the Court on Defendant's Motion for Compassionate Release (Doc. 111) (the "Motion"), filed by Donald Smith ("Smith").[1] Smith is currently incarcerated at FCI [Federal Correctional Institution] Elkton in Ohio. Smith asks this Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The United States (the "Government") did not file a response, and the time to do so has now passed.[2] Smith, through counsel, filed a "Supplemental" in support of the Motion.[3] (Doc. 123.) The matter is ripe for review.[4] For the reasons set forth below, the Court **DENIES** the Motion.

---

[1] The Motion was originally filed by Smith as a "Motion for Reconsideration." (Doc. 110.) However, the Court's order denying Smith's earlier motion for compassionate release was entered on April 20, 2020 (Doc. 109) while Smith's filing (Doc. 110) was not made until September 3, 2020. *See United States v. Hunter*, No. 3:06-cr-61, 2020 U.S. Dist. LEXIS 68720 (S.D. Ohio Apr. 20, 2020) (denying motion for reconsideration of previously denied motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because it was untimely given that such a motion must be filed within the fourteen-day period for filing an appeal). The Court ordered, pursuant to the Notation Order entered on September 4, 2020, that Smith's filing be treated as a *pro se* motion for compassionate release. The Motion was refiled in accordance to the Notation Order on September 4, 2020. (Doc. 111.)

[2] Pursuant to the Notation Order entered on October 9, 2020, the Government was to file their response, if any, on October 14, 2020. October 14 passed without a response being filed.

[3] The Court is also in receipt of familial correspondence in support of the Motion.

[4] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2]

1

I. **BACKGROUND**

Smith appeared before the Court on two related matters, Case Numbers 3:17-cr-25 and 3:18-cr-198. In Case Number 3:17-cr-25, the Government filed an Indictment, on February 16, 2017, charging Smith with violating 21 U.S.C. § 846. (No. 3:17-cr-25 at Doc. 21.) In Case Number 3:18-cr-198, the Government filed an Information, on December 28, 2018, charging Smith with violating 21 U.S.C. § 856(a)(1). (No. 3:18-cr-198 at Doc. 2.) Pursuant to a plea agreement, Smith pleaded guilty to the charge in Case Number 3:18-cr-198 in exchange for the charges against him in Case Number 3:17-cr-25 being dismissed. (*See id.* at Doc. 4 at PAGEID # 5.) The Government then moved to dismiss the charges against Smith in Case Number 3:17-cr-25, and the Court granted the Motion to Dismiss on April 24, 2019. (No. 3:17-cr-25 at Doc. 105; 04/24/2019 Notation Order.) As related to Case Number 3:18-cr-198, the Statement of Facts, signed by Smith and his attorney, states:

> Beginning on an exact date unknown, but at least by on or about January 17, 2017 and continuing up to and including January 23, 2017, the defendant **DONALD SMITH** knowingly rented, used and maintained certain premises located at 51 Glenwood Ave. in Dayton, Ohio for the purpose of storing and distributing, in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance.
>
> On January 20, 2017 a United Parcel Service (UPS) security official received an anonymous telephone tip advising that certain packages destined for 51 Glenwood

---

the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted). Smith initially petitioned the Warden of FCI Elkton for compassionate release on July 20, 2020. (Doc. 111-1 at PAGEID # 540.) To the extent that Smith asks the Court to waive any exhaustion requirement, it lacks the authority to do so. *See Alam*, 960 F.3d at 833-34 (holding that the exhaustion requirement is a mandatory claim-processing condition that binds courts absent waiver or forfeiture and "nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions"). However, as the Court finds that the exhaustion requirement has been satisfied due to the passage of 30 days from the Warden's receipt of Smith petition to the Warden, the Court need not further consider Smith's request to waive any exhaustion requirement (Doc. 123 at PAGEID # 605).

Ave. in Dayton, Ohio were believed to contain narcotics contraband. Ultimately, UPS and later law enforcement officials intercepted three parcels. Each of these parcels were addressed to "Cams4less/ (Job Site), 51 Glenwood Ave. in Dayton, Ohio 45405". Each of these packages had a listed return address of "Wayne Sealey, C/O Postnet CA217, 20058 Ventura Blvd., Woodland Hills, CA 91364". These parcels were opened by law enforcement pursuant to a state search warrant. Two of the parcels were found to contain approximately 6,917 grams of a mixture or substance containing detectable amounts of methamphetamine, its salts, isomers, or salts of its isomers. Law enforcement officials thereafter repackaged the three parcels containing in excess of 500 grams of seized methamphetamine, a Court authorized GPS device and electronic sensor.

On January 23, 2017, law enforcement authorities completed a controlled delivery of said parcels to the residence at 51 Glenwood Ave., Dayton, Ohio. Shortly thereafter the defendant **DONALD SMITH** together with Salathiel Goodson and Donald Jenkins-Mills appeared on scene and collected said parcels from the front porch of said residence. The three parcels were thereafter taken inside the residence. Within minutes, law enforcement agents entered the residence pursuant to an anticipatory state search warrant and seizing the parcels and apprehending defendant **DONALD SMITH**, Salathiel Goodson and Donald Jenkins-Mills.

(No. 3:18-cr-198 at Doc. 4 at PAGEID # 11.)

The Final Presentence Report ("PSI") regarding Smith provided additional information about the circumstances of the offense, and it identified two previous adult criminal convictions. (PSI at ¶¶ 43-44.) One conviction was for criminal sexual conduct (for which Smith appears to have served approximately five years in prison), and the other conviction involved attempted delivery or manufacture of a controlled substance. (*Id.* at ¶¶ 43-44, 62.)

On April 12, 2019, the Court imposed a one hundred eight-month term of incarceration; three years of supervised release with special conditions; a $100 special assessment; and forfeiture of property. (No. 3:18-cr-198 at Doc. 9.) Smith is thirty-seven years old and has an anticipated release date of January 7, 2027. *See* https://www.bop.gov/inmateloc.

## II. ANALYSIS

Smith asks the Court to reduce his sentence to "time served, and a term of supervised release which includes home confinement in any period which this Court deems appropriate" and

3

to consider what he alleges are extraordinary and compelling reasons for doing so, pursuant to 18 U.C.S. § 3582(c)(1)(A). (Doc. 111 at PAGEID # 538.)

### A. Legal Standards

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

First, commentary to an applicable policy statement issued by the Sentencing Commission identifies four, relatively narrow, circumstances in which "extraordinary and compelling reasons"

may exist.[5] United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n. 1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n. 3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

Second, that same applicable policy statement also requires that the defendant not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.[6] 18 U.S.C. § 3142(g); *see also*

---

[5] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples").
[6] Specifically, 18 U.S.C. § 3142(g) states:
"(g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
 (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
 (2) the weight of the evidence against the person;
 (3) the history and characteristics of the person, including—
  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

*United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

Third, the factors set forth in Section 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Finally, it remains that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

### B. **Application**

In support of his Motion, Smith argues that the Court should release him because of the COVID-19 pandemic and certain identified health conditions, namely certain hematology problems including low white blood cells, high mean platelet volume ("MPV"), and low lymphocyte counts, that make him "more susceptible" to contracting COVID-19. (Doc. 111 at PAGEID # 538; Doc. 123 at PAGEID 596.) He also asserts that he has used his time while

---

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required."

incarcerated to better himself through prison programming, has an "exemplary" record during his time within the custody of the BOP, and has "a plan of responsible reintegration into the community." (Doc. 123 at PAGEID # 597-98, 606.)

For the purposes of the Court's analysis, the Court will assume—without deciding—that Smith has demonstrated that his stated health conditions present an extraordinary and compelling reason to warrant release.[7] However, as addressed above, that does not end the Court's inquiry. The Court must still consider whether Smith is a danger to the safety of any other person or to the community and if the reduction would be appropriate after considering the § 3553(a) factors to the extent they are applicable.

Smith pleaded guilty to an offense involving drugs, and his prior criminal history includes a previous conviction for a drug-related offense. (No. 3:18-cr-198 at Doc. 4; PSI ¶ 44.) Also, he previously failed to comply with instructions for reporting to pretrial services, committed a bond violation for testing positive for marijuana and then denied the violation before admitting to it, committed another bond violation for testing positive for marijuana, and (according to his credit report at the time) owed a relatively substantial debt to a utility company that had been placed for collection. (PSI ¶¶ 14-15, 55, 63.) Additionally, Smith admitted to living at the premises in which the methamphetamine, and other drugs and drug paraphilia, were found. (PSI ¶¶ 17-21.) Considering the available information concerning the nature and circumstances surrounding Smith's offense, the weight of the evidence against him, and his history and characteristics, this Court does not "determine that the defendant is not a danger to the safety of any other person or to

---

[7] The Court emphasizes that it does not find any circumstance (separately or combined) alleged by Smith to qualify as "extraordinary and compelling reasons [that] warrant a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not address that question to decide the Motion. *See Keefer*, 2020 U.S. App. LEXIS 32723, at *16 ("[e]ven if [the defendant's] health condition is 'extraordinary and compelling,' the district court retained discretion to conclude that [the defendant's] individual circumstances did not warrant a sentence reduction").

the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.C., Guidelines Manual § 1B1.13; *see also United States v. Owens*, No. 20-5605, 2020 U.S. App. LEXIS 31548, at *3-5 (6th Cir. Oct. 2, 2020) (affirming district court's order denying compassionate release based on finding that defendant posed a danger to the community given her criminal history and past failure to comply with supervised release conditions). Instead, given the circumstances, the Court finds that he is such a danger.

As part of its analysis, the Court also has considered the Section 3553(a) factors to the extent that they are applicable. A number of the applicable factors weigh against granting the Motion. For example, the Court finds that the "nature and circumstances of the offense" do not favor early release, for the reasons set forth above. 18 U.S.C. § 3553(a)(1); *United States v. Westine*, No. 20-5233, 2020 U.S. App. LEXIS 21418, at *3-4 (6th Cir. July 9, 2020) ("district courts may consider the nature and circumstances of the offense … in addition to [the defendant's] age and health conditions"). Additionally, the Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence for criminal conduct, and protect the public from further crimes of the defendant do not favor early release. 18 U.S.C. § 3553(a)(2)(A)-(C). Smith has approximately two-thirds of his one hundred eight-month sentence remaining (*see* No. 3:18-cr-198 at Doc. 9). *Kincaid*, 802 F. A'ppx at 188 ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing Smith with so much time remaining on his sentence "minimizes both the impact of [his] crime and seriousness of [his] offense." *Chambliss*, 948 F.3d at 694.

In summary, in addition to finding that Smith is a danger to the safety of the community, the Court finds that analyzing and balancing the applicable Section 3553(a) factors further supports the denial of the Motion. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of compassionate release where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …"). Thus, the Court finds that the danger he poses to the community, as well as the 18 U.S.C. § 3553(a) sentencing factors, counsel against granting compassionate release.[8]

### III. CONCLUSION

The Court commends Smith for the apparent progress he has made while incarcerated in trying to better himself. However, the Court finds that he does not meet the requirements necessary

---

[8] With respect the Smith's argument concerning the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments, a compassionate release motion is not the appropriate mechanism or vehicle to raise such claims of alleged constitutional violations. *See, e.g.*, *United States v. Duncan*, No. CR 7:17-01-KKC, 2020 U.S. Dist. LEXIS 196540, at *7, 2020 WL 6196254, at *3 (E.D. Ky. Oct. 22, 2020) (explaining that, to the extent a prisoner is asserting an Eighth Amendment claim as a way to seek release from prison, "[s]uch a claim is properly brought as a claim for habeas relief under 28 U.S.C. § 2241"); *United States v. Pelletier*, No. 3:16-cr-00147-8, 2020 U.S. Dist. LEXIS 193507, at *4-5, 2020 WL 6135052, at *2 (M.D. Tenn. Oct. 19, 2020) (explaining, in response to defendant's argument that "prisoner conditions during the pandemic amount to cruel and unusual punishment," that "[c]ompassionate release is not the proper vehicle to raise his constitutional claims, which are best addressed under 28 U.S.C. § 2255 or 42 U.S.C. § 1983"); *United States v. Rodriguez-Collazo*, No. 14-CR-00378-JMY, 2020 U.S. Dist. LEXIS 78386, at *8, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) ("[d]efendant contends that the current conditions at Elkton FCI violate his [] Eighth Amendment rights. However, these claims—which the [c]ourt construes as challenging the execution of his sentence at Elkton FCI—are not properly brought in a motion for compassionate release[.]"; *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 U.S. Dist. LEXIS 72285, at *9, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (prisoner at FCI Elkton's "claims [] relating to the manner and conditions of confinement [] are not properly brought in a motion for compassionate release"); *United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 U.S. Dist. LEXIS 99811, at *17 n. 7, 2020 WL 3050705, at *6 n. 7 (D. Ariz. June 8, 2020) (prisoner's contention that the Eight Amendment's prohibition against cruel and unusual punishment supported his motion for compassionate release was unfounded because "Eighth Amendment protections and standards are not applicable to compassionate release analysis under § 3582(c)"); *see also Wilson v. Williams* 961 F.3d 829, 837-44 (6th Cir. 2020) (vacating an injunction where, although petitioner's claims were properly brought under 28 U.S.C. § 2241, petitioners failed to provide sufficient evidence to demonstrate a likelihood of success on their underlying Eighth Amendment claim).

to be granted relief under 18 U.S.C. § 3582(c)(1)(A).  For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. 111).[9]

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, November 13, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[9] The Court acknowledges the valuable contribution and assistance of judicial extern Ashley Oravetz in drafting this order.